[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Howard R. Bloomer, age 60, and the defendant Giuseppina L. Bloomer, age 61, whose maiden name was Giuseppina Lacarra were married at New York City on June 23, 1990. This is the second marriage for each party and there are no minor children.
The parties met in the spring of 1966 and dated until 1968. They resumed dating in 1988 until their marriage in 1990 after the plaintiff's divorce. The defendant was employed as a Professor of Italian and was also receiving alimony and support for the children from the first husband. At the time of the marriage, the plaintiff was unemployed. The plaintiff owned land in North Carolina and Virginia and the defendant a home in Granby, Connecticut.
For the first four years, the marriage was essentially a good one. The defendant however, was insecure, suspicious, exhibited a lack of trust and made false accusations against the plaintiff. The defendant filed for divorce in January, 1996 but withdrew it in April of that year when the parties reconciled. The situation was relatively stable until November 11, 1996 when the plaintiff informed the defendant that he had rented the apartment in New CT Page 729 York where the parties had previously resided during the week. The defendant desired this apartment for a friend and receiving this news, ordered the plaintiff out of her Goshen home. From that time on, the actions of the defendant became out of control and resulted in a complete breakdown of the relationship between the parties.
On November 17, 1996, the plaintiff returned to his studio apartment in New York and was informed by the doorman that the defendant had arrived before him, had changed the apartment's locks, and had placed some of the plaintiff's clothing and other belongings in suitcases and bags that were stored in the building lobby. Through the efforts of New York police, the plaintiff obtained a set of keys.
Beginning in November 1996, the defendant not only insisted on living with the plaintiff in the New York studio apartment but also slept with him in the same bed while, at the same time, refusing to talk to or with him. She also refused to take meals with him even when the plaintiff prepared meals for the two of them. Defendant's course of action was for the sole purpose of harassing the plaintiff and causing him emotional discomfort, anxiety and inconvenience.
Without any prior notice, the defendant commenced an action for divorce in New York County Supreme Court on November 21, 1996, fully aware that New York State did not have proper lawful jurisdiction for the action. That action was dismissed on January 30, 1997.
On February 5, 1997, the defendant who continued to sleep in the same bed with the plaintiff complained to police that the plaintiff had been "verbally abusive" and had "punched her in the bed," and that she had been "very scared." Despite her claims that she feared the plaintiff, for months following, she continued to stay in the one room apartment with the plaintiff and sleep in the same bed with him.
On February 20, 1997, the defendant filed a Petition with the New York County Family Court commencing a proceeding under Article 8 of the Family Court Act, arguing that the plaintiff be adjudged to have committed a family offense. In that petition, defendant claimed that on February 5, 1997, the plaintiff menaced and pushed her. The defendant also claimed that the plaintiff had "been very threatening and intimidating . . ." and that she was CT Page 730 "afraid of him." Finally, defendant also claimed that plaintiff was emotionally unstable and irrational. As a result of defendant's Petition in the Family Court, a Temporary Order of Protection was issued against the plaintiff on February 20, 1997. Despite her claims of fearing the plaintiff and feeling threatened and intimidated by him, defendant continued to reside in the studio apartment with plaintiff until forced to leave the premises by an order of the Connecticut Superior Court dated April 28, 1997.
On May 20, 1997, a hearing was held in the New York County Family Court on the defendant's Article 8 petition and the petition dismissed against the plaintiff. On that date the defendant asked the police to arrest the plaintiff for violating the Temporary Order of Protection issued by the Family Court on February 20. At the time, the defendant was still residing with the plaintiff in his New York studio apartment. During an argument, the defendant followed the plaintiff into the bathroom and began grabbing papers belonging to him. When plaintiff asked her to stop and attempted to retrieve his papers, the defendant indicated that she was going to call the police. Instead, the plaintiff called the police. When the police arrived, defendant showed them the Family Court Temporary Order of Protection and claimed that the plaintiff had assaulted her.
As a result of the defendant's accusations, the plaintiff was arrested, handcuffed and removed from his residence building, remaining in various New York City jails that night and all of the following day.
On April 28, 1997, a judicial order was entered in the Superior Court of the State of Connecticut granting sole possession of the one-room apartment at 1100 Madison Avenue to the plaintiff. The defendant ignored this court order and refused to leave the premises at 1100 Madison Avenue. The defendant continued to remain in the apartment unlawfully, again causing the plaintiff to have to engage legal counsel and to file a Motion For Contempt in Connecticut Superior Court on or about May 2, 1997, seeking a court order to have her removed.
The defendant caused numerous actions to be commenced against the plaintiff in New York City Family Court, New York State Supreme Court, New York City Criminal Court, Connecticut Superior Court, and North Carolina Superior Court. These actions were designed to harass the plaintiff, cause him embarrassment, and CT Page 731 unnecessary legal expenses. Had the defendant resided in Goshen and not without right insisted on occupying the plaintiff's New York apartment none of the incidents would have occurred. In the view of this court, the actions of the defendant subsequent to November 16, 1996 have been without justification.
The plaintiff is presently employed as a financial consultant earning $110,000.00 per year under a contract which will terminate in May 1998. He hopes to increase his private consulting income which last year was under $2,000.00. He has trust income of $52.00 per week. Mr. Bloomer claims art works of $75,000.00; a bank account of $3,500.00; Dean Witter Reynolds securities of $89,300.00; Union Private Bank securities of $117,200.00; and an IRA of $14,000.00. In addition he has real estate in North Carolina valued at $300,000.00 with a net equity of $217,000.00 and real estate in Lorton, Virginia valued at $775,000.00 with a net equity of $592,000.00. His debts total $124,900.00.
The defendant has weekly income of $769.00 including $661.00 for substitute teaching which terminated in December, 1997. She owns the real estate located at 54 Thompson Road in Goshen which has a value of approximately $450,000.00. She also has an apartment in New York City valued at $113,000.00 with a net equity of $73,000.00. Her checking accounts show $1,500.00 and $1,400.00. She has stock of Sutton Resources of $4,000.00; Vista Gold Corp. $3,000.00; and U.S. Treasury Bonds of $108,210.00.
The defendant for whatever reason has engaged three attorneys in Connecticut alone at a cost of $44,000.00 to date and the plaintiff has been forced to expend a like amount to defend himself against the defendant's unjustified allegations and legal actions. In shaping financial orders, the court takes into consideration the financial outlay caused by the defendant.
Based upon the evidence and the provisions of General Statute46b-81, the court finds that the marriage has broken down irretrievably and that the following orders should enter:
1. A decree of dissolution based upon irretrievable breakdown.
2. The plaintiff shall pay to the defendant lump sum alimony of $40,000.00 payable on or before January 15, 1998. The defendant shows stock assets of $115,200.00. She has reduced her CT Page 732 stock equity to purchase an apartment in New York with an equity of $73,000.00. She has also unnecessarily expended in excess of $30,000.00 in legal fees. In the reconciliation agreement dated April 24, 1996, the defendant requested $50,000 to achieve a portfolio of $250,000.00. The plaintiff cannot be expected to reimburse the defendant for her apartment or unnecessary legal fees especially when his total legal fees are over $40,000.00. The financial order entered by the court is in line with the requested $250,000.00 less attorney's fees.
3. If the defendant chooses to stay on the plaintiff's present Time insurance policy, which is a private policy, and converts to her own private policy under Time insurance which she has a guaranteed right to do, then the husband shall pay the cost of the wife's medical insurance which is approximately $850.00 a quarter for a similar policy, same deductibles, same life time maximum benefits, same co-pays, etc. through August of 1998 when the defendant shall be eligible for Medicare, Medicaid, etc.
4. Each party shall retain their real estate, financial assets, stocks, bonds, etc., that he or she brought into the marriage or that belonged to each party prior to the marriage or were obtained by inheritance, divorce settlement during the marriage.
5. The defendant shall release her lis pendens against the plaintiff's property in North Carolina within 30 days of the divorce, and the plaintiff shall release his lis pendens against the defendant's property at 54 Thompson Road, Goshen, within 30 days of the divorce.
6. The plaintiff shall transfer to the defendant the 1000 shares of stock of Sutton Resources presently in his possession.
7. a. The defendant shall return to the plaintiff all of his non-marital assets still in her possession, including his family's heirloom jewelry and sterling silver tea set as set forth on the attached list hereto shown as "non-marital property left in Goshen."
b. The Roman anchor which was purchased during the marriage with the plaintiff's funds shall belong to the plaintiff.
c. The remaining personal property as referred to on the CT Page 733 list attached hereto as marital property left in Goshen and marital property at 1100 Madison Avenue Apartment shall be equitably divided.
d. The plaintiff shall have the right to remove the daffodil bulbs planted in the corner of the barn foundation wall at 54 Thompson Road, Goshen, Connecticut, which were from his mother's gardens, which removal shall take place between August 1 and September 30, 1998.
8. Each party is restrained from any contact in person, by mail, telephone or any other means from the other except as necessary to carry out this judgment or prosecute or defend an action commenced by the plaintiff against the defendant in the State of New York.
Judgment may enter accordingly.
HON. WALTER M. PICKETT, JR. State Judge Referee
Non-Marital property left in Goshen
sterling silver tea service
HBB's jewelry in GLB's jewelry case (various sets of cuff links, studs, etc.)
heirloom jewelry from Bloomer, Alexander and Dougall families
Hyundai computer
Hewlett-Packard laserjet printer (1)
collection of antique oil lamps from Middle East
Kerosun-brand kerosene heater
copper tie rack
daffodils planted in corner of lawn
Marital property left in Goshen
AIWA stereo system CT Page 734
Hubcaps (in basement) and snowtires (in woodshed) for 1981 Oldsmobile Cutlass
Roman anchor
Shards from Roman amphora
photographs
black white kitchen table
Sunshine computer
Hewlett-Packard laserjet printer
Sony Trinitron TV
RCA TV
Italian chest (casapanca)
Skag 52 tractor
Husquavarna R 255 weed whacker
16-foot Kraus MultiMatic ladder
Comfort Glow (Model GF9B) kerosene heater
110 volt — 220 volt transformers (2)
White overfile cabinet (in attic)
Marital Property in 1100 Madison Avenue apartment
brass umbrella stand
desk lamp
standing lamp
vacuum cleaner
hatrack CT Page 735
small white chest
iron and ironing board
small chair w/blue seat
door table on trestles
blue area rug (faux Indian)
L-Tec stereo system (cassette/radio only)